UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT BICKEL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )     No. 3:06 CV 246 |
| | ) |
| AM GENERAL, LLC, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

## I. INTRODUCTION

Plaintiff Robert Bickel filed suit against his employer, defendant AM General LLC, alleging that it violated the American with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA). (DE # 1 at 4-5.) Defendant moved for summary judgment on all of plaintiff's claims. (DE # 17, 18.) Plaintiff responded and affirmatively waived all of his claims except for his allegation that defendant violated the ADA by regarding him as disabled, then refusing to consider him for promotions and transfers and failing to offer him work accommodations. (DE # 27.) Defendant then replied. (DE # 30.) The court now GRANTS defendant's motion for summary judgment.

## II. FACTS

Plaintiff is presently employed at defendant's auto assembly plant. Defendant assembles Hummers, the General Motors' sports utility vehicles renowned for their enormous size and showy styling. Plaintiff was hired to work as a "weld tech," but was shifted to a "production tech" position on the "engine line," and eventually became a

production tech on the "chassis line." (DE #19 at 6-7.) Plaintiff has worked at the plant since November 2001. (DE # 1 at 2.)

Plaintiff has an unfortunate history of recurring back problems. He has twice undergone surgery to fuse vertebrae, and experiences pain and stiffness throughout his body due to other chronic spinal problems, including herniated discs, pinched nerves, and arthritis. (DE # 19 at 9-10, 12-13, 16, 19.) While these problems began before plaintiff began working for defendant, his job at the assembly plant did not improve the health of his back.

In his more than five years of working for defendant, plaintiff has taken medical leave several times to rest and rehabilitate his back. (DE # 19 at 12-22.) On one occasion, after feeling recurring pain in his left arm, plaintiff underwent a "cervical fusion," his second vertebrae fusing surgery. (DE # 19 at 23, 33.) This operation caused him to miss at least four weeks of work. (*Id.*) During his time working at defendant's plant, plaintiff also suffered injuries to his head, left eye, and wrists. (*Id.* at 20-22.)

In 2002 and 2003, plaintiff's back problems led his physicians to give him "permanent restrictions" on his work capacity. Specifically, his doctors restricted him from lifting more than fifty pounds from the floor to his waist, more than forty pounds from his waist to his shoulder level, and more than forty pounds from shoulder level to over his head. (DE # 21 at 34.) He was also only permitted to "occasionally" lift forty pounds from the floor to his waist, thirty pounds from his waist to shoulder level, and thirty pounds from his shoulders to above his head. (*Id.*) In addition, the restrictions

2

prohibited plaintiff from pulling more than fifty pounds and pushing more than sixty. (*Id.*). Plaintiff's doctors further restricted him from bending, stooping, squatting or crouching for more than twenty percent of his workday. (*Id.* at 35.) However, even with these restrictions, plaintiff was still able to perform his job as a production tech.

In June 2004, after undergoing his second back surgery and receiving these permanent work restrictions from his doctors, plaintiff successfully applied for a transfer to a "TSG" position. (DE # 33 at 9.) A TSG is a permanent substitute – filling in for absent employees at multiple positions as needed. (*Id.*) Plaintiff worked in that job for only two or three days, before a supervisor removed him, informing him that he could not work as a TSG with permanent restrictions. (*Id.* at 9-10.) Plaintiff then sought to have the restrictions eased, requesting permission from his doctor to bend, stoop, squat or crouch for up to sixty percent of the workday. (DE # 20 at 9; DE # 21 at 38.) His physician denied this request. (DE # 21 at 38.)

In May 2005 plaintiff learned that a "team leader" position was available. (DE # 20 at 7-8.) Defendant's assembly plant is organized into sections of workers called "teams," which is a subset of a "group;" each team performs a specific task in a particular area of the plant. (DE # 19 at 11; DE # 20 at 6.) A team leader supervises a team, and maintains its efficiency and quality. (DE # 24 at 10-11.) A team leader also makes repairs in his or her team's area, stands in for any missing team member, and may need to serve as a substitute for other positions on different teams. (*Id.* at 11-12, 19.) Thus, team leaders are required to know and be able to perform the individual jobs of

3

all of their team members, as well as the jobs of workers on surrounding teams. (*Id.* at 12-14.)

The way defendant fills a vacant team leader position is by "polling" the team members and other members of that team's group to see if they are interested. (DE # 20 at 6-7.) Interested employees then are allowed to try out the team leader role by filling the position for a temporary period. (DE # 20 at 6-7; DE # 24 at 7-8.) Employees still must submit a formal application for the position, and then are selected, usually on the basis of seniority. (*Id.*)

A supervisor at defendant's plant, Stephen Bagby, did the polling for the open team leader position at issue. (DE # 24 at 8-9.) Bagby polled plaintiff's team members but failed to poll plaintiff. (DE # 20 at 7; DE # 24 at 18.) Plaintiff discovered that he had been overlooked, and asked Bagby why he was not polled about his interest in the position. (DE # 20 at 7-8.) Bagby told plaintiff that he was not eligible to be a team leader because he had permanent medical restrictions. (*Id.* at 8.) In his deposition, Bagby testified that his superior and workers in defendant's human resources department had told him that employees with permanent restrictions could not be team leaders. (DE # 24 at 16-17.) Plaintiff did not attempt to try out the team leader position, and did not formally apply for it. (DE # 20 at 7-9, 15.) A female employee with no medical restrictions eventually received the position. (DE # 28-11.)

Both before and after the team leader position became available, plaintiff applied for a "material handler" position. (DE # 20 at 15-17.) Purely based on his level of

4

seniority, plaintiff should have been in line to get the job. (DE # 24 at 28.) However, defendant's chief of human resources examined defendant's permanent medical restrictions, discussed them with an employee who apparently supervised the material handler position, and determined that plaintiff's restrictions prevented him from doing the necessary components of that job. (*Id.* at 26-27.) Thus, plaintiff was not awarded the material handler position. (*Id.* at 29.)

Plaintiff also alleges that he was not polled regarding a open "engine line" position, and when he discussed it with his supervisor, he was told that he wasn't polled because of his permanent restrictions. (DE #27 at 5-6.)

Plaintiff subsequently filed a complaint with the EEOC, alleging that he was disabled and that defendant discriminated against him by denying him promotions and job transfers and not offering to make reasonable accommodations. (DE # 23 at 29-34, 36-37.) The EEOC declined to pursue the complaint, and an amended complaint plaintiff filed. (*Id.* at 28, 35.)

Plaintiff then initiated this lawsuit, alleging that (1) he was disabled or defendant regarded him as disabled, defendant refused to transfer or promote him based on his disability, and defendant failed to make reasonable accommodations for him; (2) defendant refused to transfer plaintiff in retaliation for plaintiff filing a complaint with the EEOC; and (3) defendant refused to transfer plaintiff and restricted him from taking future FMLA leave in retaliation for him taking such leave. (DE # 1 at 3-5.) Defendant subsequently moved for summary judgment. (DE # 17, 18.)

**III. STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court's function is not to weigh the evidence but merely to determine if "there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must ask whether "there are genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. In the summary judgment context, a "genuine issue" is not a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "a genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). In assessing whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Liberty Lobby, Inc.*, 477 U.S. at 255; *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).

**IV. DISCUSSION**

*A. Plaintiff's Waived Claims*

Defendant has moved for summary judgment against all three of plaintiff's claims. (DE # 17, 18.) In his response to defendant's motion, plaintiff has affirmatively

6

waived his ADA retaliation claim and his FMLA claim. (DE # 27 at 1 ("Plaintiff has decided not to pursue his FMLA claim . . . or his ADA Retaliation claim").) The court therefore grants summary judgment to defendant on plaintiff's FMLA claim and his ADA retaliation claim.

*B. Plaintiff's ADA "Regarded As" Claim*

In his response to defendant's summary judgment motion, plaintiff explains that he is now only alleging that defendant violated the ADA by regarding him as disabled and then discriminating against him. (DE # 27 at 1-2.) This is often known as a "regarded as" claim.

Such a claim can satisfy the ADA's primary requirement – that a plaintiff show that he is "disabled" according to the ADA. *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir.2005); 42 U.S.C. § 12102(2) ("disability" defined as "being regarded as" having "a physical or mental impairment that substantially limits one or more of the major life activities of" an individual). To succeed on his claim, plaintiff must also show "that he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and that he suffered from an adverse employment action because of his [perceived] disability." *Nese*, 405 F.3d at 641. However, the court will focus solely on the first element because it is dispositive in this case. The court notes that since plaintiff's sole claim is that defendant regarded him as disabled, if plaintiff fails to make that showing, he cannot attain relief under the ADA even if he was denied

7

a promotion or a transfer due to some medical condition. "The ADA is not a general protection for medically afflicted persons." *Id.*

There are two ways for plaintiff to prove that he was perceived as having a disability. He must prove that either: (1) his employer mistakenly believed that he had a physical impairment that substantially limited a major life activity; or (2) the employer mistakenly believed that an actual, nonlimiting impairment substantially limited a major life activity. *Nese*, 405 F.3d at 641 (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir .2001)); *see also* 42 U.S.C. § § 12102(2)(A), (C); 29 C.F.R. § 1630.2(l). In other words, "the employer must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting ." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

Plaintiff relies on the latter theory – alleging that defendant believes he has "a substantially limiting impairment when, in fact, the impairment is not so limiting" *Sutton*, 527 U.S. at 489 – and claims defendant viewed him as substantially limited "in the major life activity of working." (DE # 27 at 1-2.) To demonstrate that defendant viewed him as substantially limited in his ability to work, plaintiff must meet a "demanding standard" and show that defendant regarded him as having "an inability to work in a broad range of jobs." *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 197-200 (2002); *E.E.O.C. v. Schneider Nat., Inc.*, 481 F.3d 507, 511 (7th Cir. 2007). The Seventh Circuit has further explained that:

8

> except in rare cases in which the [plaintiff's] impairments are so severe that [his] substantial foreclosure from the job market is obvious, he must present some evidence of the number and types of other jobs in the geographic region, from which he would be excluded because of his perceived impairments. The impairments must substantially limit employment generally, not merely preclude an employee from performing either a particular specialized job or a narrow range of jobs. A plaintiff can never satisfy his burden by showing only that his employer believed that he could not perform a specific job.

*Kupstas v. City of Greenwood*, 398 F.3d 609, 613 (7th Cir.2005) (internal citations and quotations omitted). Therefore, in order to establish a prima facie case of "regarded as" discrimination under the ADA and survive summary judgment, plaintiff must demonstrate that his employer believed his physical problems substantially limited his employment generally. *See id.*

In support of his claim that defendant regarded him as disabled in the major life activity of working, plaintiff points to defendant's rule against hiring employees with permanent restrictions to be team leaders, and defendant's decision not to poll plaintiff about an open engine line position, also, allegedly, due to his permanent restrictions. (DE # 27 at 8-12.) Oddly, plaintiff does not cite plaintiff's attempts to transfer to a material handler position or plaintiff's alleged removal from a TSG position as a basis for his argument. (*See* DE # 27 at 8-12.) But even if plaintiff had done so, these actions would not have been enough to demonstrate that defendant regarded him as substantially limited from "employment generally."

That is because plaintiff has failed to "present some evidence of the number and types of other jobs in the geographic region, from which he would be excluded because

of his perceived impairments." *Kupstas*, 398 F.3d at 613. Instead, plaintiff has merely argued that his exclusion from the team leader and engine line positions is sufficient to show that defendant regarded him as disabled. It is not, even when also considering his exclusion from the material handler and TSG positions. Rather, the evidence pointed to by plaintiff is almost exactly what the Seventh Circuit has found insufficient – proof that defendant regarded plaintiff as unsuitable for a "narrow range of jobs." *Id.*

Specifically, all of these jobs appear to consist of intense physical labor. For example, the material handler position involves "routinely lifting, retrieving, carrying and delivering material weighing up to 50 pounds" and can include repetitive "bending, twisting, stooping and crouching" while carrying heavy loads. (DE # 24 at 38.) A team leader, while a supervisor, has to regularly fill in for missing workers and make repairs. (DE # 24 at 11-12.) This means a team leader must be capable of working in awkward positions and carrying heavy objects. (*Id.* at 11-14.) The same goes for the TSG position, which is a general substitute job, where the employee needs to be able to do a broad range of tasks, including physically demanding work. (DE # 33 at 10 (plaintiff noting that a TSG "might be required to lift something, for example, 200 pounds").) The court finds that these positions – manual jobs at an auto manufacturing plant – are a "narrow range" of jobs. Thus, plaintiff cannot simply rely on his exclusion from these positions as evidence that defendant regarded him as substantially limited in "the major life activity of working." *See, e.g, Delgado v. Certified Grocers Midwest*, 2007 WL 2363065, at *7 (N.D. Ill. Aug. 16, 2007) (fact that defendant company fired worker

plaintiff from job at warehouse due to shoulder injury was not evidence that it regarded him as "incapable of working generally").

Plaintiff's complaints about defendant's personnel policies are unpersuasive. Plaintiff takes issue with defendant's policy that categorically prevents employees with permanent restrictions from working as team leaders. However, he ignores that this restriction, while seemingly unfair to him, is logical – as discussed above, team leaders are required to be able to perform dozens of different physically demanding tasks. It makes no sense to consider a physically limited employee for a position where the bodily demands are rigorous and unpredictable. Defendant's policy is not unreasonable, and applying it to exclude plaintiff from the team leader position does not show that defendant regarded him as disabled.

Plaintiff also argues that he wasn't given a chance to show that he could perform the material handler position, and that denying him that opportunity is unfair. He is apparently unaware that when defendant considered him for that position it analyzed his specific list of permanent restrictions, and determined whether any of these restrictions would prevent him from the performing the positions' required tasks. (DE # 24 at 26-29.) After doing so, it concluded that his specific restrictions would prevent him from doing that job. (*Id*.) That is, defendant decided not to offer plaintiff that position after reviewing his medical restrictions and the specific tasks of a material handler, and finding that they were incompatible.

Furthermore, plaintiff's claim that defendant regarded him as disabled in his capacity to work is belied by plaintiff's continuing employment at defendant's plant, where he works as a production tech. As explained in depositions, plaintiff works on a team with other employees, who regularly rotate positions within the team. (DE # 24 at 23.) This demonstrates that defendant believed plaintiff was capable of competently performing several different jobs. As plaintiff's supervisor explained, "when [plaintiff] was at work, he was a good employee . . . I knew he could rotate within the team and the quality was good . . . ." (DE # 24 at 18.)

Indeed, the evidence, particularly the unopposed evidence of how defendant filled the material handler position, shows that defendant does *not* regard plaintiff as substantially limited in "employment generally." Defendant employs plaintiff at a job where he performs a range of tasks, and it analyzed plaintiff's individual restrictions when determining whether he could work as a material handler. Plaintiff does have serious back problems, but even with such health issues, it appears that defendant still regards him as a capable employee. Based on the evidence in this case, no reasonable jury could find that defendant regards plaintiff as substantially limited in the major life activity of working. Therefore, plaintiff fails to establish the primary part of his prima facie case – that he is disabled under the ADA. *See Nese*, 405 F.3d at 641. Defendant thus merits summary judgment on plaintiff's ADA claim.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE # 17) is **GRANTED**. The court hereby **CANCELS** all settings herein. Counsel are reminded to inform any witnesses scheduled for testimony at trial that they are not to appear. The Clerk is to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendant AM General, LLC, and against plaintiff Robert Bickel, who shall take nothing by way of his complaint.

       **SO ORDERED.**

**ENTER:** October 9, 2007

       s/James T. Moody
       JUDGE JAMES T. MOODY
       UNITED STATES DISTRICT COURT